IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JULIO SANTIAGO de ALBA<br>  Plaintiff | Civil Case No.: |
| v. | |
| PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA)<br>  Defendant | Americans with Disabilities Act<br><br>Jury Trial Requested |

## COMPLAINT

TO THE HONORABLE COURT:

NOW COME Julio Santiago-de Alba through the undersigned attorney and most respectfully Alleges, Sets Forth and Prays:

### I. NATURE OF THE ACTION AND JURISDICTION

Julio Santiago-de Alba seeks redress for the discriminatory dismissal from his employment for reason of perceived mental disability. This is an action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112 *et. seq*. This case arises under federal question jurisdiction pursuant to 28 U.S.C. § 1331. All conditions precedent has been complied with.

### II. THE PARTIES

1. Julio Santiago- de Alba ("Santiago"), is an adult, citizen and resident of Puerto Rico.

2. At all times relevant to this Complaint, Santiago was an employee with the Puerto Rico Electric Power Authority (PREPA).

3. The Puerto Rico Electric Power Authority (PREPA) is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico.

4. At all times relevant, PREPA has been an employer with more than five hundred (500) employees.

### III.    RELEVANT FACTS

5. Santiago was PREPA's employee for thirty-two (32) years.

6. At the time of his suspension from employment, Santiago's position title was "Electricista de Central Generatriz III."

7. Santiago was responsible for executing electrical work related to the installation, removal, diagnostics, repair, calibration, preventive conservation and correction of central generating equipment, turbo generators, substations, generators, load distribution centers, among others.

8. On January 4, 2023, the defendant removed Santiago from employment.

9. Prior to effectuating his removal from employment, the defendant did not afford Santiago with any pre-termination notice or process.

10. Before his termination, Santiago had been absent from work as a response to and in compliance with defendant's own administrative protocol instituted to confront the COVID Pandemic.

11. Defendant's COVID-19 Protocol responded to the Government of Puerto Rico's Administrative Order OE-2021-051 dated July 28, 2022.

12. Pursuant to Administrative Order OE-2021-051, an employee that was not vaccinated for COVID-19 was allowed to opt to cover for his absences from work by applying his available compensatory, vacation and/or sick-leave time. Once these leaves were exhausted, the employee also had the option to remain on a leave-without-pay status until the end of the Pandemic was declared.

13. Santiago was not vaccinated for COVID.

14. In compliance with Administrative Order OE-2021-051, in 2021 and part of 2022, Santiago exhausted the time he had accumulated in compensatory, vacation and sick-leave. Once exhausted, Santiago remained on a leave-without-pay status until December 19, 2022.

15. On December 19, 2022, Santigo returned to work.

16. Santiago's return to work was short lived. On January 4, 2023, the defendant ordered Santiago suspended from work without pay.

17. Santiago hereby asserts that defendant's decision to dismiss him from employment and salary responds to its discriminatory and unfounded perception that he is mentally disabled.

18. On August 13, 2022, Josué A. Colón Ortíz, then defendant's Executive Director, sent Santiago a text message to his telephone number. Colón-Ortíz stated to Santiago:

> The majority of your supervisors and peers at the [AEE] say that you are crazy and that you are a risk for others and the AEE, that you should retire for disability reasons. You have to be careful because, with all probabilities you will be referred to medical evaluations, whether you like it or not, to the AEE's medical consultant to evaluate your physical and mental health and make a recommendation.
> So WATCH OUT [OJO].

19. From that moment on, defendant's then executive director, Josué Colón-Ortíz, upscaled his harassment towards Santiago.

20. On Sunday, September 18, 2022, Colón-Ortiz called Santiago to his cellular telephone. By this time, Colón-Ortiz was being investigated for management irregularities under his responsibility. Colón-Ortíz threatened Santiago by instructing him that "he [Santiago] had to choose which side he was going to take."

21. Defendant's actions were triggered by its illegal discriminatory intention to force Santiago to retire from his employment alleging he suffered from a mental disability.

22. Consistent with his August 13, 2022 warning, the defendant unilaterally decided that Santiago should be referred for the mental health professionals for evaluations, including but not limited to psychologists and psychiatrists.

23. The defendant unilaterally referred Santiago to the Program for Employees Assistance ["PAE"], a program designed to provide confidential support to employees who seek its services. In Santiago's case, however, it was the employer and not the employee, who sought the intervention of employees assigned to the PAE to engage in interviews unsolicited by the plaintiff.

24. On October 5, 2022, Santiago received a telephone call from Sandra Rivera-Pol, defendant's Human Resources Director. Ms. Rivera-Pol presumptively called Santiago because he had been absent from work for a long time.

25. Santiago clarified for Ms. Rivera-Pol that her perception was not correct as she had met with him at Colón-Ortiz's office in May 2022. Santiago suggested to Rivera-Pol to examine his attendance records that evidenced that he was excused from work.

26. Rivera-Pol asked Santiago how trustworthy he considered himself to be.

27. Santiago responded by referring to an experience he had on the job back in December 2006 when an explosion occurred at the defendant's Palo Seco Station. Santiago intended to support his sense of trustworthiness by referring Rivera-Pol to the fact that the Federal Bureau of Investigations was referred to him to obtain the information necessary while performing its investigation of the occurrence.

28. Santiago further informed Rivera-Pol about his intention to return to work by mid-November 2022. Rivera-Pol responded that Santiago should consider retirement because he had been a defendant's employee for more than thirty (30) years.

29. On October 12, 2022, Santiago received a telephone call from Ángeles Quiñones-Capó, Director of the Occupational Health and Safety Division. Quiñones-Capó also directed the PAE program. She requested Santiago to visit her office on October 17, 2022 for an interview.

30. On October 17, 2022, Quiñones-Capó interviewed Santiago. Again, Santiago was asked, this time by Quiñones-Capó, when he was planning on retiring.

31. In the evaluation report rendered by Quiñones-Capó on October 24, 2022 she wrongfully reported that de Santiago had stated that he was realizing "special jobs for the Federal Bureau of Investigations." Quiñones-Capó concluded that Santiago de Alba should be "urgently" evaluated by a psychiatrist.

32. After Santiago was "interviewed" by Quiñones-Capó, he received yet another appointment for an additional evaluation. He was instructed to attend to a "medical evaluation" on November 9, 2022.

33. On November 9, 2022, Santiago assisted to the scheduled medical appointment with a psychiatrist under contract with the defendant. The psychiatrist asked Santiago he had ever visited a psychiatrist or a psychologist for purposes of treatment. When Santiago answered that he had never visited either professional, he was asked whether he held two jobs. When he answered that his only employment was with the defendant, the medical interviewer stated that the information he had pointed that Santiago worked for the FBI and the NIE ["Negociado de Investigaciones Especiales"]. Santiago stated that this was false information.

34. Santiago asked the medical interviewer to identify who signed the document he made reference to and the interviewer answered "Nobody."

35. Santiago asked the medical interviewer for a copy of his file but the medical interviewer denied Santiago the copy requested.

36. On December 1, 2022, the defendant's Occupational Health Department again stated that Santiago de Alba should be urgently evaluated by a psychiatrist.

37. Given defendant's unilateral and consistent pressure for Santiago de Alba to be evaluated by a psychiatrist and defendant's appointed health care professional's insistence that he had stated that he worked for the F.B.I. as the reason for justifying said evaluations, Plaintiff sought the medial evaluation of neutral mental health professionals from the University of Puerto Rico Medical Sciences Campus.

38. Santiago underwent a psychological evaluation by clinical psychologist Luis Sánchez-Caso on December 22, 2022 and a psychiatric evaluation by Dr. Marialis Torres-Rodriguez on January 10, 2023, both with the U.P.R. Medical Sciences Campus.

39. The psychological and psychiatric evaluations performed by the neutral mental health professionals at the U.P.R. Medical Sciences Campus demonstrated that Santiago did not suffer from any psychological or psychiatric condition and that he was fit to perform his duties at defendant's employ.

40. On January 3, 2023, defendant concluded that Santiago was unfit to return to work.

41. On January 4, 2023, the defendant ordered Santiago to cease working.

42. The defendant suspended Santiago from work without pay.

43. From January through March 2023, Santigo-de Alba requested the defendant to provide him with copies of his medical records, including but not limited to the psychological and psychiatric evaluations performed as a result of defendant's referrals to defendant's mental health employees and/or contractors.

44. On March 3, 2023, the defendant's Executive Director, Josué Colón, was informed that Santiago was fit to work.

45. Upon Santiago's return to work, many of defendant's employees were transferring or transitioning to work with Genera Puerto Rico, a company created to use the defendant's existing energy generation systems.

46. The period of time within which defendant's employees were allowed to effectuate the transitioning to Genera PR was short and Santiago initiated the procedures established to ensure a successful transfer.

47. In order for a PREPA employee to be qualified for the above-mentioned transfer or transition the applicant had to be fully employed by PREPA at the time of application.

48. Upon information and belief, defendant and its Executive Director, Josué Colón, interfered with Santiago's transfer process to Genera PR by asking individuals to provide false information about the Plaintiff in order to justify his dismissal from PREPA thus ensuring his inability to secure employment with Genera PR.

49. As a result of defendant's discriminatory actions, the defendant interfered in the exercise Plaintiff's right to participate in defendant's promoted incentives for employees interested in working for Genera PR to voluntarily resign from PREPA.

50. Based on its illegal and knowingly erroneous perception of Plaintiff as mentally disabled individual, the defendant harassed Plaintiff by demanding his submission to multiple psychological and psychiatric evaluations with the illegal intention to support his dismissal from employment.

51. As a result of defendant's intentional discriminatory conduct, Plaintiff suffered loss of income in an amount of no less than $50,000.

52. As a result of defendant's intentional discriminatory conduct, Plaintiff suffered emotional damages in the form of indignation, anxiety, anger, frustration, among others.

53. For the above stated reasons, the defendant is liable to the Plaintiff pursuant to the Americans with Disabilities Act.

### IV.    CAUSES OF ACTION

54. Plaintiff fully incorporates herein each of the allegations set forth in paragraphs 1 to 52 of the instant Complaint.

55. Defendant is liable to the Plaintiff for its illegal harassment based on perceived mental disability.

56. Defendant is liable to the Plaintiff for its illegal suspension without pay from employment for reason of perceived mental disability.

57. Defendant is liable to the Plaintiff for its illegal interference with Plaintiff's employment transfer or transition to Genera PR.

58. The defendant is liable to the plaintiff pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112 *et. Seq.* for each and every one of the claimed illegal actions set forth above.

### V.    RELIEF

59. Plaintiff fully incorporates herein each of the allegations set forth in paragraphs 1 to 58 of the instant Complaint.

60. Plaintiff seeks redress for the amount of $300,000 in compensatory damages, an amount of no less than $50,000 in loss of income, attorneys' fees and costs of litigation expenses.

Respectfully Submitted.

In San Juan, Puerto Rico, this 30th day August 2025.

*S/Maricarmen Almodóvar-Díaz*
USDC No.: 204406
P.O. Box 363871
San Juan, Puerto Rico 00936-3871
(787)233-3306
malmodovarlaw@gmail.com

9